Good morning, Your Honor, and may it please the Court, my name is Mark Sigmund and I represent the Plaintiff Appellant Corotoman. The District Court below here erred as a matter of law in two ways. First, by applying the Gross Disproportionality Doctrine in the first place, and second, in how it applied that doctrine. I'm going to focus on the latter argument this morning. Here, the District Court clearly erred in failing to recognize that the defendant has a burden. Can I just go back on that first one? Because that seems to me, I assume you're not conceding, but do you know of any state that has rejected the Gross Disproportionality Doctrine in contract entirely? No, which is why I'm not conceding it, but not raising it right now. Okay, so you, look, but I mean, well, let's, I'll just say this, assuming that we don't certify this case to the Supreme Court of West Virginia, we couldn't get to Issue 2 without, I mean, I guess we could assume for the sake of argument that exists and then settle in your favor? Is that how you would propose that we do this? Well, you know, I don't think certification is necessary here. Oh, it strikes me that there's a whole bunch of super unclear questions of state law, but ... Well, I mean, I would respond that no court has ever held that the doctrine doesn't apply. It's in all of their statements. I mean, it makes law and economic sense and everything else. The only, the strongest argument we have about why it does not apply at all is because the contract here allows my client, the plaintiff, to choose a measure of damages, and we did. I, if I were the court, I would assume that the doctrine does apply and then B, hold that how it applies, and I think that's clearly undisputed here as well. We cited 17 cases and three treatises about how the doctrine works, and the airport never really addresses any of that. They cite one of those 17 cases for an undisputed proposition. They cite the Virginia case, but they totally screw up how it works. That case is directly in support of us. And they don't mention any of the three treatises, so how the doctrine works is crystal clear. The plaintiff establishes its preferred measure of damages of, you know, expectation damages here, the cost to complete, and then the defendant, it shifts to their burden to establish an alternative measure of damages, which is diminution of value, and then if there's gross disproportionality between those two, the defendant can force upon the plaintiff, force upon him or her, that measure of damages which they don't want. Every case that applies that doctrine applies it the same way. They don't address those cases. They cited these two cases that are distinguishable, the Mort Wallen case and this case from Nevada. Those are unique on their facts, and we explained why those don't work. I'm not... What happens at the last... Okay, so in some ways, I mean, there's a whole bunch of these, but one of the things that strikes me as really hard, okay, so now we're in the world where the defendant has successfully forced the plaintiff, as you say, into an alternative measure of damages, right? Let's assume... I know there's a lot of steps, but let's assume we got there, and then at that point, there's a complete failure of proof on the issue of alternate question of damages. What happens then? Then the defendant loses, which is exactly... We lose it, so we go back to the thing that was grossly disproportionate? Well, you don't know that it's disproportionate. I mean, so a defendant cannot establish that the numerator measure, the preferred measure of damages is disproportionate without establishing what it's supposedly disproportionate to, so the defendant has to establish diminution of value of damages in order to establish disproportionality. It's just... The ratio is a ratio between two measures of damages. The plaintiff comes out with the numerator, and then the defendant establishes the denominator and says, this is so much less than the numerator that it just makes sense to award this, and so if the defendant fails to establish the diminution value denominator, then it fails to establish disproportionality to begin with, i.e. it fails to establish the alternative measure of damages, which is exactly what all of those courts have held. So you think it's a... Okay, so you think it's a null set. Like, you think there's no category of cases in which gross disproportionality is shown, but there is no adequate evidence of the alternative measure of damages. You just think, conceptually, that couldn't exist? Correct.  Why does that make sense, though? Like, okay, so let's imagine a world in which the cost to complete damages are $12 billion, and let's establish a world in which the parties disagree about what diminution of value is, the parties vehemently disagree, but the range of plausible diminution is $100,000 to $500,000. And the court just says, I don't need to decide whether it's one or five, because let's assume for the sake of argument, it's $500,000, $12 billion is grossly disproportionate to $500,000. So who cares? So, fair enough. I grant that. And that's actually pretty close to the Mort Wallin case that they cite. And so in that case, right, there was a building that burns down, it cost $186,000 to totally rebuild the entire store. And so you know that the diminution of value is something around there, it can't be more than that, which was grossly disproportionate to this $400,000 they wanted to, like, pull out the mahogany. And so the court, even though no specific diminution of value number had been established, the court said, well, and this is, you know, it didn't say this, because I don't think it conceptualized it, but essentially it said that, well, the parties agreed that there must be disproportionality here, because the diminution of value number, we don't know what it is, but it can't be more than this small number. That's the Mort Wallin case. And so then what does the court award as damages in that case? Well, I mean, I suppose what you, well, what happened in that case was the court, well, that was different, because the parties agreed about the burden, but here, what would the court do? I think the court would award, well, I mean, you know, in that, in that, in that, in that exact situation, in that case, there the parties agreed that in that unique situation the plaintiff did have the burden to establish the diminution of value, because, because the gross disproportionality had been established. And so, I mean, I suppose in that case you would, in that narrow and exceptional case, you would award what the plaintiff, whatever number the plaintiff has established as, as its measure of damage, as diminution of value. But every other case does not, every case in the restatement, I mean, and I've quoted a ton of them, they all say that the defendant has that burden, and if it fails that burden, then it fails to establish disproportionality. And that happens again and again and again. Look at all the quotes in the cases that we cited. It happened in the Andrulis case, it happened in the Ninth Circuit and the Ross-Dress-for-Less. The Ross-Dress-for-Less is perfectly on point, because in that case there was no evidence of diminution of value. The court recognized that. And then it said, well, who has the burden? Because whoever has the burden is going to lose on this. And then it analyzed it, and said clearly the defendant has the burden, clearly the defendant loses, and then the Ninth Circuit affirmed that. That's exactly what should have happened here. And in the Andrulis case, same exact thing, the reason I cite that case is because it more specifically shows what the remedy would be here. In the Andrulis case, which is the Maryland Supreme Court, the intermediate court had remanded for further argument about what the evidence would be, and the Maryland Supreme Court did the right thing and said we don't, it actually vacated the remand and said you don't need a remand here because the law is clear. One party had the burden, it failed to carry the burden, they lose, game over, let's move on, which is exactly what should happen here. It would be obviously patently unfair to remand and allow the airport a second bite at the apple when we never got a second bite at the apple. Can I just, I have a procedure question, this is maybe my theme for today. What in the literal heck was this procedure before the district court where we have a trial, what was this, and how is this possible? Because I will say, confess, there's a whole bunch of things I'd love to know the answer to that the district court does not even attempt to answer, and I'm trying to decide how much of that to blame on the fact that I don't understand what this procedure was. It was a trial that wasn't a trial, where district courts are making factual findings but there are no witnesses, what in the world was this? Your Honor, it was new to me too. It was a great question. It was, I mean. Did you object to doing this? No, the parties agreed to it. It was a trial by briefs and a trial by the athletes. I don't know what that means. Well, you know, I mean, imagine a bench trial where the judge is looking at live witnesses and says this person is more credible than the other. It's the same thing except it was based on just written affidavits. Now, is it much harder to determine credibility of an affidavit? Of course it is. And I understand Your Honor's concern about that. I would just say this. There are absolutely no really, no disputed facts in this appeal that really make a difference about anything. I mean, for example, it is undisputed that there's no diminution of value evidence. The court said that directly. The airport never has contended otherwise. They don't contend otherwise in their brief. The arguments here are all legal arguments. The airport says, well, you've defined disproportionality wrongly because the denominator is not diminution in value. It's the value. Logically, it makes no sense. I explained in our reply brief, right? That's wrong. We explained why. All the disagreements here are our legal ones. And so I do think it was a weird procedure below. I've never seen it. But frankly, I don't have a problem with it. And neither did the parties because ultimately, you know, the evidence was was undisputed. You know, the only real dispute was between the two experts. Well, let me ask this, because I had the same question as Judge Hytens. Procedurally, it appears that the court, that there's no discussion regarding the burden. It seems like that was decided after after, I guess, briefs were submitted. It is, yes, a little odd just because it seems as if there should have been some relevant standard by the court ahead of time. I agree, Your Honor, and I've sort of spent a lot of time trying to figure out what went wrong here. Like, where did the train get off the track? And it starts with the fact that this argument was never even raised by the airport until it's in the middle of the second summary judgment. They didn't allege this as an affirmative defense, which, by the way, some courts have held you have to actually allege it. So I mean, it could have been waived from day one. But even putting that aside, it was it was raised late in the game. And they did not do a very, frankly, a very good job of explaining what the doctrine was. And it was their burden. And so I think the district court didn't have what it needed before it to to to understand what the law was. And just as a result, misapplied the law. Mr. Sigmund, my understanding is your position that your client only had to show one thing, the cost of what it is, what it would be to actually do the work on the land. That's true. That's your position. Yes. It didn't have to establish value at all. Because before you get the diminution of value, you have to have value. So because you don't have evidence, your evidence is at best you relied on, I think I'm right. You correct me because you know the record better than me. But it seems like you looked at it when they were trying to figure out their due diligence is how much they should offer. They got something like 200,000 to $10,000. But then they determined that your client's land is on the low end, the 10,000. Other than that, that's all you have a valuation of, right? A couple of things. Number one, the law is crystal clear that the plaintiff's burden is to establish its measure of damages, which the standard measure in a construction case is cost to complete. It has nothing to do with the value of the land. All the cases hold that. Number two, I don't want your honor to get... If that's true, then the diminution of value, so then what do I have to prove? The defendant... But that burden is already established. It's only worth $10,000 an acre. So a few things, and I don't want the court to be misled, that $10,000 is not a diminution of value, a number. That is in the appraisal. Well, you have to start with a value first. How are you going to determine how the value and how much it is diminished if you don't know what the value is? All right, so real quick. Answer that question real quick. Diminution of value is the difference between the current value of the land as is versus the value currently as it would be had it been overblasted. The 2010 appraisal does nothing to show either of those numbers that the $10,000 number was one number in the appraisal. There was two numbers, 10,000 an acre and 200,000. The 10,000 was for raw land, the 200,000 was for improvement-ready land. Two things. Number one, neither of those numbers counts, neither of those numbers establishes diminution of value. Two, even if they did, the land here would have been development-ready land, so the relevant number would be 200,000 an acre, which gets you $8 million, which is more than... So in other words, you should not be looking at the 2010 appraisal, even the airport doesn't attempt to justify that or to claim that it establishes value. There is no evidence of diminution of value here. That's our argument. I... There is... Your Honor seems suspicious of the idea that there is any such value evidence. There is not value evidence. I wholeheartedly agree with that. That's our entire point. Our point is that of all the cases hold and all the treatises, that's not our burden to establish those value. Our burden is to establish classic expectation damages. In a construction contract case, that's cost to complete. The value is theoretically usually irrelevant. If you hire a contractor to put marble tile in your pool and they screw up, your damages is the amount of money it would take to put the marble tile in your pool. It doesn't matter whether... How that changes the value in your house. Maybe you were doing what some people do and you're putting marble tile in and it actually decreased the value of the house, or maybe it didn't add any value because you liked marble more than anyone else. That doesn't matter, and there's treatises that talk about how important it is to give people what they bargained for, and what they bargained for was the thing they asked for. If you want marble tile, you should get marble tile. Even if you put more value on that and other people don't value it and it didn't increase the value of the house, there's only a small, narrow exception to that, and that is when the defendant can come in and establish its burden to show that that marble tile would... That the diminishing value by failure to put it in was so, so, so tiny and so disproportionate that you applied that alternative measure of damages instead. So you're basically saying diminishing the value doesn't even apply to this case, really? 100%. It was their burden to establish that they failed. You don't think it even applies to this case, because you're saying we get the tile, the heavy duty, you know, great tile, no matter what it did or didn't do to the value, right? That's what your position is. Your Honor, I think it applies in the sense that I've... It could have applied here had they satisfied their burden to establish the diminishing value. They had a defense here. They could have made the defense. They utterly failed to do it. They haven't even contended on appeal that they've really done that, and so the defense does not exist, and so that is what we're contending. You know, and again, if there's any concern about that, I would just urge the court to read the 17 cases that we cited and the three treatises all explaining that that's exactly how it works. We cited a bunch of cases specifically in Missouri, and I wanted to outline the facts about that, because I understand the court's concern, and so we outlined the facts about there was one about a parking lot, and it needed to be paved, and they didn't pave it, right? And so the plaintiff said, give me the money to pave it, and the defendant said, well, you know, diminution of value, and the court said, you didn't prove diminution of value. You had the burden. You didn't show it, so this guy gets his paving money. You know, they got their paving money. We want our overblasting money, and I just want to say all we're asking for here is exactly what we bargained for. I mean, we literally bargained and got a contract that said, give us this thing. We didn't get the thing. All we want is the thing that we bargained for. It's a classic contract. But it's not the thing that you bargained for. The thing you bargained for is them doing it, and what you want is the money that would cost to do the thing that everybody knows isn't actually going to happen now. Well, Your Honor, I... It can't be done, right? Is it in fact the case that the thing that you bargained for literally cannot be done at this point? Well, if the airport were to allow us to do it, it could be done. Number two, the best evidence about what actually would happen here is the fact that we sought specific performance. You know, they talk about this lottery ticket. We didn't even seek damages here. We literally asked the court, ordered them to overblast this land, and it was only after the court refused that that we've... Now we're forced to seek damages. So, no, I think we're trying to get exactly what we bargained for. I'll reserve whatever time I have. Thank you. Thank you, Mr. Siglin. Mr. Strauss. Thank you, Your Honor. My name is Michael Schultz, and I represent the Central West Virginia Regional Airport Authority. The airport authority asked this court to affirm in all respects the order entered by the district court on July 27, 2023. At its core, this case represents an effort by Karadamon to obtain $4.3 million in costs to complete damages for overblasting work that will never be performed. And because Karadamon is in bankruptcy, that $4.3 million will go to the bankruptcy estate where the largest single secured creditor is Catherine Welford, with over $3 million in secured claims, who is the wife of John Welford, the president of Karadamon, who just last week pled guilty to defrauding the bankruptcy court in the Karadamon bankruptcy, out of which this case arose. We ask this case to confirm everything that the district court did because the district court got it right under West Virginia law. Can I ask you, so, you know, if we're talking about sort of fairness and equity, yes, like $4 million for a null, we're never going to do that. Doesn't sound great. But there, I mean, if you can phrase it, a way you can phrase it for them is they basically argue you got the entire benefit of the bargain. They didn't. Right. So why? Explain to me why they're wrong in claiming that what you are essentially claiming is that you get to retain the entire benefit of the bargain without doing the entire thing that you promised to do. We didn't get the full benefit of our bargain, Your Honor. We didn't get a navigation easement. We paid 250 of the $350,000 required by the settlement agreement for navigation easement, and we never got it. So we didn't get exactly what everything that we bargained for. But I think your question, Judge, was on cue because everyone knows that this overblast work is not going to be done. All you have to do is look at the declaration of John Welford submitted to the district court in the briefing that resulted in the court's order on damages because the district court, while excluding his expert testimony that was never disclosed, explicitly stated that it would give credibility to what Mr. Welford observed or personally knew. And what Mr. Welford explicitly said that, and I quote, as it sits, the property in question is checkerboarded in nature, making it extremely difficult, if not impossible, to develop. Mr. Welford also said, and I quote, it is impractical to overblast a mountain without doing it all at once. You cannot overblast and reduce the height of the mountain in a checkerboarded fashion along property lines. That property he's talking about, the Karadimon property at issue in this case, is only one of those checkerboards. So you can't go in and overblast just that one square on the checkerboard because Mr. Wellman himself acknowledges that's impossible. Can I ask you the same question I asked the other side, which is what in the heck was this proceeding and how did we end up doing something that strikes me as completely procedurally irregular? Your Honor, this was a breach of damages claim. It was a civil action. Sure. So you're going to have a trial at the end of the day. Right. On all of the elements of a breach of contract claim. Okay. But before we got to that trial, the district court entered summary judgment on the establishment of a valid contract. All seems fine so far. Doesn't have to be tried at a trial. Then the district court entered a summary judgment on the breach of that contract. Okay. Again, that's taken out of the trial context. Sure. So now that all is going to be tried is the damages question. Great. And the parties agreed, and I agree with Mr. Sigmund, the evidence on the damages claims, the factual evidence, there's really not a lot of dispute about it. It became more an issue of law. And so the parties acknowledged that at the pretrial conference and agreed to submit the damages questions on briefing rather than have a trial on it. Okay. And that's what- How do I not know what this land was worth today? And how do I not know what this land would have been worth had this been done? And how do I not know the answer to all kinds of questions that seem extremely relevant to the damages question? It's simple, Your Honor. Because Karadaman failed to do what West Virginia black letter law that's been in existence for over 73 years instructs it to do. And that's exactly what the district court found. The district court actually cited to the case of Taylor versus Elkin Homeshow, which states that in this jurisdiction, which of course is West Virginia, in this jurisdiction, their burden approving damages by a preponderance of the elements rests with the claimant. That is taken from the Salmons Brothers versus Elk Creek Coal case all the way back in 1951 in which the West Virginia Supreme Court stated, and I quote, the burden approving damages rests upon the claimant. That's Karadaman. Everybody agrees that's the general rule for damages, but your friend on the other side says, and the restatement says, and apparently all these other cases say, sure, but in a world where you, the defendant, are trying to move off the default form of damages, we have this burden shifting thing. Except that's not what West Virginia law says. He wants you to look at everything except West Virginia law. Well, in fairness to him, you want us to predict the West Virginia Supreme Court will adopt a doctrine that they've never expressly adopted because everybody else has adopted it. Fair enough. But it seems like of the everybody else who's adopted it, many of them say this further thing about the burdens. And you want us to pretend they won't do that. Actually, Your Honor, on the issue of damages, I think it's crystal clear. Under the Salmons case, the burden stays with the claimant. And that's not necessarily— Under a doctrine the West Virginia— Again, this goes right back to the question of whether we should just certify this case. Because you need me to predict that the West Virginia Supreme Court will adopt a doctrine that they have never expressly adopted. And you then further need for me to predict how they will go about adopting a doctrine they've never expressly adopted. Your Honor, I would submit that if you look at the wording of the West Virginia Supreme Court in both the Steinbrecher case and the Trenton case, they have, if not explicitly, strongly implicitly— I agree that they probably have—I agree with you. They probably strongly imply, but they haven't done it. And then I have to predict how they're going to implement a doctrine they haven't adopted yet. Your Honor, there is no guesswork as to how it would be implemented. Because the West Virginia Supreme Court says— I assume that in a lot of other states, the default rule is the plaintiff always has to prove his or her damages. And yet, in some of those states, it appears to me the rule is, in this particular context, the burden sometimes shifts to the defendant. I can't imagine a single other state in the Union whose default rule isn't the plaintiff has to prove damages. Your Honor, the district court actually relied upon a case that did just that. BLB Aviation, a circuit case from 2015 applying Nebraska law. And in that case, the party claiming the damages, which was a failure to maintain and perform maintenance on an aircraft, sought damages against the contractor that was supposed to do that. And the party seeking the damage put forward evidence of what it would cost to complete the contract, which was the cost to, in essence, redo all of the maintenance and properly prepare the paperwork. And the court found, citing the economic waste doctrine, that no, that's economic waste to redo all of that work, that none of the party's dispute was done. Just there's no paperwork to show it. And then the court said, well, what is the diminution in value to the aircraft? And that court looked at the party claiming the damages for putting forth the diminution in value. Because that party didn't put forth diminution in value, the party claiming the damages was out of luck. And that's exactly what's called for in West Virginia. And by the way, going all the way back to 1921, Justice Benjamin Cardozo, in the fairly infamous at this point Young's case, he absolutely set forth that the results may be nominal or no damages. Breach of contracts cases are filed all the time. But you have to prove all of the elements. And if you don't prove damages to which you are legally permissible, that are legally permissible under a state law, you are out of luck. And that's exactly what happened here. How about this, Mr. Jones? My good friend, colleague, he brought it down to how we got here. And you agree that as a matter of law, you agree that there was a valid contract. There was a breach. What's left is damages. You also agree that, generally speaking, damages are the burden of the plaintiff. Right? Right? I don't generally agree with it. I say that under West Virginia law, the burden to prove damages is always on the party seeking damages. Period. Right. So, okay, always. Just not the plaintiff, but always. That's correct. So what you're saying is that all you have to do in this case is say, as you did, they were supposed to overblast this land. They did not. That is my damage. Right? That is Karadiman's position. Correct. And therefore, you're saying the burden is on their side to say, no, no, no, no. We look at diminution of value to determine whether or not there's a disproportionate type of situation. Right? But you're saying, that's why I'm kind of saying it never is disproportionate, really, for you, because if your damages, they didn't do what they said, diminution of value doesn't apply. That's why I can't understand. Why would it apply if I want my house to be painted blue and you didn't paint it blue? I don't care how much diminution of value you painted yellow. I want my house blue. I mean, that's your position, right? And so you can't come up with a number because all your numbers mean nothing. I didn't bargain for my property to be increased. I bargained to be an overblast on my property. Is that your position, basically? It's not quite that clear cut, because I will recognize, Your Honor, going all the way back again to the Youngs and Jacobs case from 1921, that was a case in which the contract called for reading pipeline within the structure. Had to be reading pipes. And as it developed after the structure was built, about 40% of the pipes were reading pipes. The rest were not reading pipes. So the property owner wanted the benefit of the bargain. I want you to put in reading pipes because that's what I wanted. Substitute, I wanted a blue house for a yellow house. Well, to take out 60% of the pipes in the building would cost a tremendous amount of money. For what would it do to the change in value of the property? Virtually nothing. You may have a very special reason why you want a blue house. And the law recognizes that in certain situations. There's a case cited in our brief from New York, where the aesthetic appearance of the house was of utmost importance to the party seeking the damages because what he wanted in this aesthetically unique situation was what he wanted. And courts are flexible enough to say that in that particular situation, where there is a particularized showing of actual value to what is to be constructed, we will allow cost to complete damages that are grossly disproportionate to the diminution in value. But this is a very narrow exceptional circumstance that actually is present in West Virginia law. Not in breach of contract cases, but in tortious interference to property damage, to property, that the West Virginia Supreme Court just 10 years ago in the Brooks vs. City of Huntington, recognized that you can't have economic waste unless you can show a very particularized sense of value. We don't have that here. Is it overblasting the land worth something? Let's say it's disproportionate. It can't be zero. The cost to complete or the change in the value to the property itself? There again, we go back to the blue and the yellow house. You're saying that, well, what difference does it make? You know, it's blue, yellow, it doesn't matter. There's no damages here. But there is. They said that they wanted their land overblasted. And, you know, you should have done it. You didn't do it. Now you want to say that the court was right in saying there was no value at all to what we promised to do. It must have been something to allow you to say I'm going to pay $4 million to do it. Now you're saying there was no value. Are you saying this is totally, this was just a lark? Let's see what it looks like to blow land up and just watch it one day, bring picnic baskets. It was for further developing the land at some point, wasn't it? Development that Mr. Welford admitted in a declaration submitted to the district court for purposes of the damages trial. He admitted it's extremely difficult, if not impossible, to develop this land by itself because it's simply one block in a larger checkerboard. And that checkerboard was never subject to an exchange because the Federal Aviation Administration forbid it, or didn't give approval, I should say. And so that never happened. So the district court absolutely correctly evaluated damages on just the Corotoman property, not on some speculative exchange of properties that may or may not ever take place, and there's zero evidence that it will. It seemed like in that sense the district court somewhat almost rewrote your contract. It's like telling you, well, you had the opportunity, and it's certainly an arm's length bargain. You had an opportunity. You knew it was a checkerboard when you agreed to do it, didn't you?  You never asked for a rescission of that contract or asked that a force majeure occur somewhat and that we can't do it. It's not practical, right? Your Honor, we are admittedly stuck with what the district court found in terms of contract formation and breach of contract. Right. We raised the defense. Because you didn't appeal. I mean, you could have appealed those grants of summary judgment against you, right? We could have, yes, Your Honor. And the decision was made not to. So that the only thing before this court is the question of damages for the failure to conduct the overblast work on this one parcel of property. And on that, so how do we consider that the parties expressly agreed in the contract as to what the damages would be? This expressed almost like an election of you either do one or you do two, liquidated, that argument that he's making. That argument, let me be candid, just Judge Benjamin, makes me scratch my head a lot. Because what the contract actually says is that Karadaman, quote, may seek the greater of actual compensatory, consequential, and or incidental damages or liquidated damages in the amount of $10,000. The contract does not require a particular calculation of compensatory damages. It does not require the award of damages that are not permissible under West Virginia law. Certainly doesn't require that Karadaman be able to obtain damages that are not permissible under West Virginia law. It's just a very generic statement that it can seek compensatory damages, which is exactly what Karadaman did. Seeking doesn't mean you get them. You can seek them, but if it's not permissible under West Virginia law, you're not entitled to get them. Your Honor, again, I believe that, and this is crucial, the airport's position is founded on West Virginia law. Not these 17 other cases from other states. The job of this court is not to homogenize the law across the district or the country. The job of this court is to apply the law of the state in which this matter arose, and that's West Virginia. And with all due respect to Judge Haytens, I believe that West Virginia law is clear it would adopt the gross disproportionality rule. And in doing that, the West Virginia Supreme Court, absolutely crystal clear and unambiguous language, said that that involves a comparison of the cost of repair or completion and the value of the structure or property. It's the value. That's what the West Virginia Supreme Court has said. And the West Virginia Supreme Court has also stated, and again I go back to the Salmon Brothers quote, it's been the law of West Virginia since at least 1951, that it is the duty of the plaintiff to establish by a preponderance of the evidence all provable elements which may enter the quantum of damages sought to be recovered. Koroneman seeks the damages. It's their burden to prove them. They failed to do that, and in that respect, the district court was absolutely correct in its order. And we would ask that this court affirm that order on all counts. Thank you, Mr. Schill. Thank you, Your Honor. Mr. Siegman? First off, the airport cites Steinbrecher and Trenton, the two West Virginia cases, to apply this doctrine. Well, guess what? Steinbrecher and Trenton cited cases from Virginia, Washington State, and the Amateur 2D Treatise. So we went and looked at those, and all of those cases apply the exact burden shifting that we're talking about here. So in response to this idea that West Virginia laws is not what I say it is or somehow different, we know exactly what West Virginia law is. When it said, here's what the doctrine is, it cited three authorities, all of which are completely in line with the 17 cases and three treatises that we cited. And again, one of those treatises is the Amateur 2D Treatise. We cited that. That was cited by the court in Steinbrecher or Trenton. I forget which one it was. I think Your Honor got it. Of course we have the burden. We're not shirking a burden. We have the burden to prove the damages we want, which was the cost to complete. To make that simple, we accepted their expert's number about that, which the district court found was credible. So we satisfied our burden. Then the burden shifts. Really quickly, I just want to address this checkerboard argument because that is an entire red herring. So what the airport fails to mention is that it had the contractual burden to swap that land. It failed to do so. That was a breach of contract. They tried to excuse that breach in the district court on the summary judgment by saying, well, the FAA stopped it or prohibited that. And the district court rejected that and said, no, that was your burden. That's a breach. So what does that mean? We cited their statement on multiple cases making crystal clear that a defendant cannot rely on impossibility or impracticability when they cause the thing that makes it impossible or impractical. In fact, a defendant cannot rely on that even when that activity doesn't rise to a level of a breach. But here it actually rises to a level of a breach of contract, so you can't rely on that. We cited that, I mean, gosh, multiple treatises, multiple cases. They didn't respond to that at all in their brief. We also pointed out, by the way, that the airport never made that argument below. The district court made that argument for them. That's procedurally improper. We pointed that out in our brief here, and the airport has no response to that in their brief on appeal. We also pointed out that the entire issue here is who has the burden to establish diminution value and whether it was satisfied. And that this argument, this checkerboard doesn't really get around that fact, and that undisputedly there is no such evidence here. We make all these arguments, and they have no response to that. What was it worth to your client to have the overblasting done to the line? I mean, what was it? Beyond the fact that they wanted it done, what value was it? Well, I mean, my client wanted it for all the reasons that he wanted it, as he expressed, ultimately to develop it. I mean, it was, again, it's – Why didn't you have experts to say if you blast it, it's worth X, and not blast it is Y? Because it wasn't our burden. I mean, I – You're a lawyer. I mean, it may not be your burden, but you may lose on that issue. I call it belt and suspenders. I may not be my burden, but it's sure nice to have evidence in there that, look, this is what – because you know about the disproportionality, right? You knew that that might come back and bite you, right? You knew that, didn't you? That – I mean, it was raised super late. Because you looked at am-sures in those places like that wonderful state like Virginia, the law, right? You looked at those, right? Right. So why wouldn't you put that in and say, look, if this was overblast, this would be the value of this property. Why is it not in this case? So first off, because we wanted specific performance, so we didn't need, you know, value at all. We just wanted the actual overblasted land. And then when that was rejected, frankly, you know, we had two competing experts, one of which was a lot more than the other, and that was the standard – that's the default measure of damages is cost to complete. We thought, well, look, if we're just – I mean, we took a big hit. I don't – you know, my client was not happy with that number. But instead of making a big deal of it, they said we'll make this easy and accept their own expert's number, which is a third of ours. And so the reason we never got that damage – got those numbers is because it was – that's not the default – it's not the default amount of damages. It's not the measure that we sought. We weren't legally required to. So why would we? I mean, this bears emphasis. The default measure of damages in any contract case is the expectation damages, the cost to complete, the construction, the repair. You get what you bargain for. The diminution of value is a rarely used measure. I mean, if you – I don't have the numbers here. But if you pull up 1,000 contract cases, you know, 999, you get the cost to compare, the cost to complete. That's the expectation damages. The value damages is a weird, strange thing that only applies in certain circumstances because it's not really – it's not the default measure. And so, I mean, that's the reason why. And look, to whatever fact – to the extent that my client, you know, maybe made a litigation choice about that, fair enough, but they have the burden. And so it was – I mean, however much blame my client might have, they have ten times the amount, which is exactly what the court held in the Ross Dress for Less case where the district court recognized, you know what? Neither party had this damages evidence here. Someone's going to lose. So whoever has the burden loses. Let me look at the law. Oh, clearly the defendant has the burden. He loses. That's exactly what should have happened here. As far as – my final point would just be about certification. I understand the need for that in certain cases. I really don't think that it's needed here. In fact, from the argument I've heard from counsel, I think that counsel – our opposing counsel doesn't necessarily think that it would be beneficial to certify that here. The law is clear. If we assume that the doctrine applies, I think how to apply it is clear. And then the actual facts here are undisputed. There's a quote from the district court where it said, there is no evidence of diminution of value. That's it. The case is over. We get what we bargained for. If you have any further questions, otherwise I urge the court to remand specifically for entry of judgment and the undisputed amount. Thank you. Thank you both, counsel. We will ask the court to adjourn the court until tomorrow morning. We'll come down and re-counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, Toby J. Heytens, DeAndrea Gist Benjamin